**LAW OFFICES OF SAUL ROFFE, ESQ., P.C.**
52 HOMESTEAD CIRCLE
MARLBORO, NEW JERSEY 07746
(732) 616-1304

Licensed in New York and New Jersey

saulroffe@roffelaw.com

October 9, 2019

Hon. Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201
**Re: Colella v. Republic of Argentina 19-Misc. 2103 (MKB)**

Dear Judge Brodie,

I am the attorney for the Judgement Creditors in the above-captioned matter.  I have reviewed, but was not served with, Judgment Debtor's letter dated September 24, 2019 to Your Honor.

## SUMMARY

Contrary to the claims of Judgment Debtor, plainly, there is no basis for  the within matter to be transferred to the United States District Court, Southern District of New York ("Southern District of New York"), and the Court should not entertain such a request.  Judgment Debtor is engaging an impermissible attempt at forum shopping.   While the Judgment Debtor filed a meritless motion in the Southern District of New York to vacate a 14 year old judgment in violation of Federal Rule of Civil Procedure 60 (c)(1), which limits the time for such a motion to one year from judgment, the within action is properly venued in this Court. Suffice it to say that Judgment Creditors have submitted evidence that such motion is meritless and yet Judgment Debtor makes another attempt to avoid paying bondholders their due (Exhibit A). The within application filed by the Judgment Creditor is seeking an Order to attach the assets of Aerolineas Argentina ("Aerolineas") (located at JFK Airport) that are located solely within the jurisdiction of the United States District Court, Eastern District of New York.  As such, based upon Judgment Creditor's prior submission to this Court, it is clear that the assets of Aerolineas Argentina are subject to attachment in this action.

## ARGUMENT

While Judgment Creditors agree that Aerolineas is a corporation (but in name only), it is not by statute a separate entity from the Republic of Argentina ("Republic"). Pursuant to section

1603 (a) and (b) of the Foreign Sovereign Immunity Act,, Aerolineas, wholly owned by the Republic, is an "agency or instrumentality" of the Republic, whose assets are subject to seizure in order to satisfy a judgment against the Republic since Aerolineas is a engaged in commercial activity. That it is a corporation as opposed to a full part of the Republic's government is of no import.

The law is clear that the assets of an agency or instrumentality of a foreign state are subject to attachment. *Export-Import Bank of the Republic of China v. Grenada*, 768 F.3d 75, 83, n.9 (2d Cir. 2014); *Garb v. Republic of Poland*, 440 F.3d. 579, 590 (2d Cir. 2006). The legal status of Aerolineas is not dispositive. *Id.*, at 490-91*; Aurelieus Capital Partners, LP v. Republic of Argentina,* 2008 U.S. Dist. LEXIS101764 at *30 (S.D.N.Y. Dec. 11, 2008) (trust bonds beneficially owned by Argentina are deemed to reside in Argentina, therefore not subject to seizure on that basis). Also, the *alter ego* requirement is not as far reaching as Judgment Debtors claim. *See, e.g. Walters v. Indus. & Commer. Bank of China, Ltd.,* 651 F.3d 280, 290 (2d Cir. 2011) ("Congress sharply restricted immunity from execution against agencies and instrumentalities, but was more cautious when lifting immunity from execution against property owned by the state itself", quoting, *DeLetelier v. Republic of Chile,* 748 F.2d 790, 799 (2d Cir. 1984); *Englewood v. Socialist People's Lybian Arab Jamahiriya, 773* F.3d 31, 35-36 (3rd Cir. 1985). As a reminder, the Republic waived challenges to jurisdiction as to both the judgment underlying this motion and the attachment attempts described herein. Additionally, as firmly established, the Republic waived sovereign immunity against attempts to levy Certification of Saul Roffe, Esq., dated September 17, 2019, Exhibits D, E).

Moreover, even if Judgment Creditors are required to show *alter ego* status, they can do so. The Republic's behavior regarding Aerolineas clearly demonstrates that it control Aerolineas' financial condition and operations as if it **is not** a separate entity, and the Republic uses the asset of Aerolineas for its own purposes. First and foremost, both President Macri and former President Kirshner of the Republic have used Aerolineas for their own financial gain. President Macri had Aerolineas forgave debts owed to it by a member of his family in 2016 as well as and almost half a million peso debt a company owned by his family. Also, he recently used Aerolineas' funds to pay a debt owed by a business he owns (Exhibit B hereto). Former President Christina Kirshner is currently being investigated for obtaining "improper payments" from Aerolineas as well as other assets related to nine contracts worth 16 million pesos between Aerolineas and a company she owned, Alto Calafate (Exhibit C).

Aerolineas is funded by the Republic. Indeed, President Macri is constantly bemoaning the contributions the Republic's taxpayers make to Aerolineas' operations. The Republic first nationalized Aerolineas in 2008 in order to involve itself deeply into its finances and operations because without such nationalization, Aerolineas would have entered into bankruptcy (Exhibit D). Also, the Republic lost a lawsuit because it paid 1 peso for Aerolineas when it was valued at $832 million (Exhibit E). The Republic also approves labor agreements through the Ministry of

Labor, rather than Aerolineas' management (Exhibit F). Thus, the Republic is directly involved in labor agreements. Also, during a strike by employees over several issues, including the breach of a labor agreement entered into by Aerolineas and approved by the Republic related to salary increases based upon inflation, President Marci commented that it is inappropriate that Aerolineas costs the Republic the equivalent of "2 kindergartens per week." (Exhibit G) Further, the Republic recently replaced Aerolineas' president (Exhibit H). There is rampant speculation that should President Macri lose re-election, the current President of Aerolineas will be replaced with another political appointment (Exhibit I). The Republic also was intimately involved in the restructuring of Aerolineas by directing cuts in costs and expenses. President Macri has made it clear that he wants Aerolineas to cost the taxpayers less and is taking steps to reduce the amounts paid by the Republic for Aerolineas' operations (Exhibit J). One commentator said that without continued funding by the Republic, Aerolineas would close down (Exhibit K). Additionally, President Macri recently signed a decree which allowed Aerolineas to borrow up to $100 million from Banco Nacion, another state owned entity, to cover commitments Aerolineas had to the National Bank for Economic and Social Development, a Brazilian owned bank which were used for the purchase of Embraer aircrafts (Exhibit L). There is also substantial speculation that President Macri wants to deliberately drive Aerolineas into bankruptcy (Exhibit M). Clearly, the Republic has its hands deeply in Aerolineas' operations and financial condition, and its presidents use the Aerolineas as the Republic's personal bank. It is no doubt telling that it is President Macri that is referred to as driving events at Aerolineas and not whichever nominal president it placed in charge. Aerolineas' existence is dependent upon the Republic and has no separate financial and operational existence from the Republic. It has been used by the last two presidents as a shell for their own personal profit, and is directly controlled by the Republic, as demonstrated herein. As such, any claim that Aerolineas is completely separate and apart from the Republic is without merit.

To the extent that Judgment Debtor claims Aerolineas is not an *alter ego,* it is belied by its direct interference with the operation of Aerolineas and the heads of state using it for their own personal gain. For Aerolineas to be considered a separate, distinct enterprise, it must be responsible for its own financing and run as a distinct enterprise, completely separate and apart from the Republic and not as part of the Republic. Where the country dominates the finance and operations of the entity, it is not a separate entity. *Aurelieus Partners, supra,* at \*31; *First National City Bank v. Bancec*, 462 U.S. 611, 629-30, 103 S. Ct. 2591, 77 L. Ed. 2d 46 (1983). That is clearly not the case here.

Next, this matter should not be transferred to the Southern District of New York. The assets of Aerolineas are located in this District, not the Southern District of New York. The Southern District of New York does not have jurisdiction over these assets. Judgment Debtors clearly consider the Southern District of New York a more favorable forum; however Aerolineas' offices and assets are all in Queens, New York, within the borders of the Eastern

District of New York rather than the Southern District of New York. Thus, the Southern District of New York does not have jurisdiction over, and thus may not attach the assets of Aerolineas. However, this Court does have jurisdiction over the assets of Aerolineas., . Finally, Judgment Debtor has not offer this Court any valid reason to have the within matter transferred to the Southern District of New York.

Respectfully submitted,

Saul Roffe